IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KENNETH RICHARDS,                   §
                                    §
        *Petitioner*,               §
                                    §
v.                                  §          CIVIL ACTION NO. H-11-0690
                                    §
WILLIAM STEPHENS,                   §
                                    §
        *Respondent*.               §

## MEMORANDUM OPINION AND ORDER

The Court GRANTS petitioner's motion to recall the order of dismissal (Docket Entry No. 34), WITHDRAWS the dismissal order of August 23, 2013 (Docket Entry No. 33), and issues this Memorandum Opinion and Order and Final Judgment.

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his state conviction. Respondent filed a motion for summary judgment on June 26, 2013, serving a copy on petitioner at his address of record. (Docket Entry No. 32.) Despite expiration of a reasonable time of approximately fifty days as of the date of the original dismissal order, petitioner failed to file a response to the motion. Under the Local Rules of the Southern District of Texas and this Court, the motion is deemed uncontested due to petitioner's failure to file a response within twenty-one days after the filing of the motion. LR 7.

Based on consideration of the pleadings, the motion, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### Procedural Background and Claims

Petitioner was convicted of possession of a prohibited item in a correctional facility and sentenced to twenty-five years incarceration.  The conviction was affirmed on appeal. His petition for discretionary review was refused, and the Texas Court of Criminal Appeals denied habeas relief.  *Ex parte Richards*, No. 75,260-01.

Petitioner raises the following habeas claims in the instant petition:

1.  Texas Penal Code § 38.11(j) violates due process in that it criminalizes possession of a cell phone for TDCJ inmates but not for inmates in local or county jails, and has no rational basis to justify the disparate treatment.

2.  His Fifth Amendment protections were violated by a non-Mirandized custodial interrogation in exchange for a "promise of benefit by a person of authority."

3.  The trial court denied him due process by failing to follow Texas Code of Criminal Procedure art. 38.22, § 6.

4.  The jury observed petitioner while he was shackled, in prison-clothes, and in the presence of two TDCJ officers, violating his presumption of innocence.

5.  The trial court denied him due process by overruling his request for a continuance.

6.  The trial court denied him due process by failing to follow state law and to instruct the jury regarding the accomplice witness testimony of Cathy Harvey.

7.      Counsel was ineffective in

     (a)      failing to object to the trial court's failure to instruct the jury as required by Texas Code of Criminal Procedure art. 38.22, § 6,

     (b)      failing to investigate and prepare for trial,

     (c)      failing to introduce into evidence petitioner's statement to Howell,

     (d)      failing to request an accomplice witness instruction as to Cathy Harvey,

     (e)      failing to appeal the trial court's denial of his continuance motion,

     (f)      failing to object "to lay person deciding evidence to be given to jury panel,"

     (g)      failing to move for a mistrial after the jury observed petitioner in hand cuffs, and

     (h)      failing to object to witness bolstering.

Respondent argues that several of these claims are procedurally defaulted or otherwise unexhausted, and that all of the claims are without merit.  Petitioner, as previously noted, did not file a response in opposition to the motion.

### *Factual Background*

The intermediate court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction:

On September 26, 2006, Richards was indicted for possession of a cell phone while in a correctional facility.  Cathy Harvey, Richard's ex-wife testified that she periodically visited him at the Ellis Unit of the Texas Department of Criminal Justice (TDCJ) where he was confined.  In November of 2005, Richards asked Harvey to obtain a cell phone for him.  She bought one with pre-paid minutes and at his request placed it under a sign on a road located about ten miles from the prison.  She visited him on November 27, 2005, and

3

told him that she had done what he asked, and he later told her that he had
received the phone.

Robert Hickman, who was also confined at Ellis Unit in 2005, testified that
Richards offered him $100 to deliver packages of tobacco to another inmate.
Hickman agreed to do so if he could use Richards's cell phone.  Richards gave
the cell phone to Hickman, but Richards was arrested for possessing tobacco
before he could give the tobacco to Hickman for delivery.  Hickman later used
the cell phone and hid it after Richards was arrested.

John Riggle, an investigator with TDCJ, testified that he tried to interview
Richards about the tobacco before his arrest.  Instead, Richards asked to speak
with Eddie Howell, a major at the Ellis Unit.  Howell testified that Richards
said that his wife dropped off a bag containing a cell phone and that Hickman
hid it in the maintenance yard.  Howell did not give Richards Miranda
warnings or advise of him of his statutory rights under Article 38.22, Section
2(a) of the Texas Code of Criminal Procedure before he spoke to him.  Howell
also failed to record the conversation.  After speaking with Richards, Howell
recovered the cell phone from Hickman.

*Richards v. State,* 2008 WL 5473044, at *1 (Tex. App. – Waco 2008, pet. ref'd).

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA,

federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court

unless the state adjudication was contrary to clearly established federal law as determined by

the Supreme Court, or involved an unreasonable application of clearly established federal law

as determined by the Supreme Court.  *Harrington v. Richter*, ___U.S. ___, 131 S. Ct. 770,

785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).

4

A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

On state collateral review in the instant case, the State submitted proposed findings of fact and conclusions of law for the trial court's consideration. *Ex parte Richards*, pp.

5

139–141.  The trial court expressly adopted the proposed findings of fact and conclusions of law.  *Id.*, p. 142.  The findings and conclusions were largely procedural in nature, but did affirmatively hold that petitioner was not entitled to habeas relief.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings.  Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant.  Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Procedurally Defaulted Claims*

Respondent argues that petitioner's third, fourth, fifth, and sixth federal habeas claims have been procedurally defaulted and are barred from consideration. The Court's review of the record shows that respondent's argument is correct.

Under 28 U.S.C. § 2254(b)(1)(A), a state inmate's petition for federal habeas relief will not be granted unless the inmate has exhausted his state court remedies by presenting his claim the highest court of the state for review. *Jones v. Jones*, 163 F.3d 285, 297–99 (5th Cir. 1998). For purposes of exhaustion, the Texas Court of Criminal Appeals is the highest state court in Texas which has jurisdiction to review a petitioner's conviction. *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985). To proceed before that court, a petitioner must either file a petition for discretionary review or an application for a post-conviction writ of habeas corpus. To provide the State with the necessary opportunity to address a petitioner's claims, each claim must be fairly presented in the appropriate state court. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

Under Article 11.07 § 4 of the Texas Code of Criminal Procedure, a petitioner would be barred by application of the abuse of the writ rule if he attempted to exhaust his claims through a subsequent application for state habeas relief. As a result, such claims would be barred from consideration by the federal district court under the procedural default doctrine. *Id.* at 423.

7

Under limited circumstances, a petitioner may overcome his procedural default and obtain federal habeas review of his claims if he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner is unable to show cause and prejudice, he can obtain habeas review only if he can show that applying the procedural bar would constitute a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986) (recognizing a narrow exception to the cause and prejudice requirement when a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense). He must establish that, more likely than not, in light of new evidence, "no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.

In his third habeas claim, petitioner argues that the trial court denied him due process by failing to follow Texas Code of Criminal Procedure art. 38.22, § 6 regarding the voluntariness of his statement. Petitioner did not raise this issue on direct appeal. The trial court rejected the claim on collateral review, finding that, "[This] ground for relief should be denied because it could have been raised on direct appeal." *Ex parte Richards*, p. 139. Consequently, petitioner did not fairly present this ground to the state courts, and it is unexhausted. *See Scheanette v. Quarterman*, 482 F.3d 815, 827 (5th Cir. 2007) (holding that

state law requiring a petitioner to raise a record claim on direct appeal before raising it on state habeas is an "adequate state ground capable of barring federal habeas review").

Under Article 11.07 § 4 of the Texas Code of Criminal Procedure, petitioner would be barred by application of the abuse of the writ rule if he now attempted to pursue this habeas claims in state court. As a result, the claim is barred from consideration by this Court under the procedural default doctrine. *See Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim, which would be barred by the Texas abuse of the writ doctrine if raised in a successive state habeas petition, to be procedurally barred). Petitioner here asserts no facts or arguments establishing cause and actual prejudice to overcome his procedural default, nor does he establish that applying the procedural bar would constitute a fundamental miscarriage of justice. Respondent is entitled to summary judgment dismissal of this claim.

In his fourth habeas claim, petitioner complains that the jury observed him while he was shackled, in prison-clothes, and in the presence of two prison officers, violating his presumption of innocence. As with his third claim, petitioner did not raise this claim on direct appeal, and the trial court rejected the claim on collateral review because it could have been raised on direct appeal. *Ex parte Richards*, p. 140. The claim is unexhausted and procedurally barred at this juncture. Because petitioner asserts no facts or arguments establishing cause and actual prejudice to overcome the procedural default, and does not

establish that applying the procedural bar would constitute a fundamental miscarriage of justice, respondent is entitled to summary judgment dismissal of this claim

In his fifth federal habeas claim, petitioner asserts that he trial court denied him due process by overruling his request for a continuance. As with his other two claims, petitioner did not raise this claim on direct appeal, and the trial court rejected the claim on collateral review because it could have been raised on direct appeal. *Ex parte Richards*, p. 140. The claim is unexhausted and procedurally barred at this juncture. Because petitioner asserts no facts or arguments establishing cause and actual prejudice to overcome the procedural default, and does not establish that applying the procedural bar would constitute a fundamental miscarriage of justice, respondent is entitled to summary judgment dismissal of this claim.

In his sixth habeas claim, petitioner argues that the trial court denied him due process by failing to follow state law and instruct the jury regarding the accomplice witness testimony of Cathy Harvey. As before, petitioner did not raise this claim on direct appeal, and the trial court rejected the claim on collateral review because it could have been raised on direct appeal. *Ex parte Richards*, p. 140. The claim is unexhausted and procedurally barred at this juncture. Because petitioner asserts no facts or arguments establishing cause and actual prejudice to overcome the procedural default, and does not establish that applying the procedural bar would constitute a fundamental miscarriage of justice, respondent is entitled to summary judgment dismissal of this claim.

Respondent is entitled to summary judgment dismissal of petitioner's third, fourth, fifth, and sixth habeas claims as procedurally defaulted.

### *Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.  *Id*. at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  *Wilkerson*

*v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id.*

Petitioner contends that his attorney provided ineffective assistance of counsel in the following particulars.

*Failure to Instruct the Jury*

Petitioner claims that trial counsel was ineffective in not objecting to the trial court's failure to instruct the jury as required by Texas Code of Criminal Procedure art. 38.22, § 6. Under art. 38.22, § 6,

> Sec. 6.       In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions.  If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be

filed among the papers of the cause. Such order shall not be exhibited to the jury nor the finding thereof made known to the jury in any manner. *Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof.* In any case where a motion to suppress the statement has been filed and evidence has been submitted to the court on this issue, the court within its discretion may reconsider such evidence in his finding that the statement was voluntarily made and the same evidence submitted to the court at the hearing on the motion to suppress shall be made a part of the record the same as if it were being presented at the time of trial. However, the state or the defendant shall be entitled to present any new evidence on the issue of the voluntariness of the statement prior to the court's final ruling and order stating its findings.

TEX. CODE CRIM. PROC. art. 38.22, § 6 (emphasis added).

To prevail on this claim, petitioner must establish that, had trial counsel raised the objection, it would have constituted reversible error for the trial court to overrule the objection. As stated by the Fifth Circuit Court of Appeals, the "failure to assert a meritless objection cannot be grounds for a finding of deficient performance." *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997); *see also Buxton v. Collins*, 925 F.2d 816, 825 (5th Cir. 1991) (concluding that counsel did not act ineffectively in not objecting to a jury instruction that was not erroneous). Petitioner does not meet this burden of proof. Under well-established Texas state law, a criminal defendant is entitled to a jury instruction under Article 38.22, § 6 only if he introduces evidence at trial from which a reasonable jury could find that the statement was not voluntarily made. *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007). As correctly noted by respondent in the motion for summary judgment, the

13

"evidence" upon which petitioner relies in his petition as establishing the existence of a factual issue is his own testimony, given outside of the presence of the jury. Petitioner testified during the suppression hearing, but not at trial before the jury. Thus, the testimony petitioner cites was testimony the jury did not hear, and the evidence did not raise a fact question that the jury could resolve under article 38.22, § 6. Petitioner fails to establish either deficient performance or prejudice under *Strickland*.

The state court denied relief on petitioner's claims of ineffective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Failure to Investigate and Prepare for Trial*

Petitioner next claims that trial counsel was ineffective in failing to investigate and prepare for trial. Petitioner's claim is conclusory and unsupported in the record.

Petitioner bases his claim on trial counsel's motion for continuance, filed twelve days before trial. (Supp. C.R. 2–4.) In the motion, trial counsel stated that he "has had inadequate time to prepare and requires time to investigate the case to discover potential witnesses and prepare a defense." *Id.*, p. 2. Counsel requested a sixty-day continuance, stating that more time was necessary for him "to research and analyze the applicable law in order to prepare for, among other things, jury charge issues and evidentiary objections." *Id.*, p. 3. The trial

14

court denied the motion shortly after its filing, and trial commenced eleven days thereafter. *Id.*, p. 6.

Petitioner presents only speculation and conclusory assertions that counsel was not prepared for trial eleven days later.  This is insufficient to establish ineffective assistance under *Strickland*.  *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").  Petitioner further presents no probative evidence of what counsel failed to investigate, or that, but for such alleged failure, there is a reasonable probability that the result of the trial would have been different. Neither deficient performance nor actual prejudice are shown.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Failure to Introduce Petitioner's Statement into Evidence*

Petitioner claims that trial counsel should have introduced into evidence the statement he made to Howell.  The record, however, shows that the actual statement was not one made by petitioner, but one made by *Howell* to an investigator with the Inspector General's Office.

15

The underlying conversation between petitioner and Howell was mentioned in the statement but was not itself recorded or transcribed. *Id*., p. 26.

At trial, defense counsel cross-examined Howell regarding his testimony that petitioner said he gave Hickman the cell phone. Howell's statement was then used to refresh Howell's memory at trial, at which point Howell admitted he had not included that information in his statement. 2 R.R., pp. 156–58. The trial court later informed the jury that the conversation between petitioner and Howell had not been recorded or transcribed, and that Howell's statement had not been admitted into evidence. C.R. at 33. Thus, Howell's statement was not introduced into evidence, and does not appear in the state court record. *Id*.[1] Because the statement was not admitted into evidence and does not properly appear in the record before this Court, petitioner cannot demonstrate deficient performance or prejudice under *Strickland*.

The state court denied relief on this claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

---

[1]Petitioner included a purported copy of the statement in his memorandum filed with this Court. The copy is unauthenticated and was not presented to the state court. This Court cannot consider the copy at this juncture. *See Cullen v. Pinholster*, __ U.S. ___, 131 S. Ct. 1388, 1398 (2011).

*Failure to Request Accomplice Witness Instruction*

Petitioner alleges that trial counsel was ineffective in failing to request an accomplice witness instruction.  In rejecting this issue on direct appeal, the intermediate court of appeals held as follows:

> First, Richards argues that his counsel was ineffective for failing to request an instruction to the jury that Harvey was an accomplice witness.  Because of the nature of the evidence corroborating Harvey's testimony discussed in Richards's second issue, we cannot say that but for his trial counsel's failure to request this instruction, the outcome of the proceeding would have been different.  Consequently, Richards has failed to meet the second prong of *Strickland*.

*Richards*, at *6 (citations omitted).

A review of the record before this Court fails to reveal support for petitioner's conclusory claim that he was prejudiced by counsel's alleged error.  Petitioner did not meet his burden of establishing deficient performance and prejudice under *Strickland*, and his claim is without merit.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Failure to Appeal Denial of Continuance*

Petitioner complains that counsel should have appealed the trial court's denial of trial counsel's motion for continuance.  His claim is wholly conclusory and unsupported.

17

Petitioner fails to establish deficient performance and actual prejudice under *Strickland*. Specifically, he fails to show that, but for counsel's failure to challenge the denial of the motion, there is a reasonable probability that the result of the appeal would have been different. Petitioner presents no relevant authority showing that the denial of the continuance constituted reversible error under Texas state law, and his conclusory allegations are unsupported in the record.

The state court denied relief on this claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Failure to Object to "Lay Person" Involvement*

Petitioner claims that trial counsel should have objected "to lay person deciding evidence to be given to jury panel." Specifically, he complains that counsel did not object to the trial court's allowing the court reporter to decide what evidence should be given to the jury when the jury requested clarification of Howell's testimony and statement. Petitioner misunderstands the trial court's instructions.

The record shows that, in response to a note from the jury, the trial court instructed the court reporter to read back Howell's testimony to the jury. Petitioner complains that the trial court allowed the court reporter to determine what would be read back, and that trial counsel failed to object.

18

Petitioner's factual argument is refuted by the record.  The court reporter read back the testimony as instructed by the trial court; it was not the court report's decision to read or nor read any particular portion of the testimony.  3 R.R., pp. 124–127.  Petitioner fails to demonstrate with any particularity any specific portion of the testimony that the court reporter should not have read or failed to read, and no grounds for objection by trial counsel are shown.  Moreover, petitioner does not establish that, but for counsel's failure to object to the court's reporter's reading of the testimony, there is a reasonable probability that the result of the trial would have been different.  Neither deficient performance nor actual prejudice are shown.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

*Failure to Request Mistrial*

Petitioner argues that trial counsel should have requested a mistrial[2] after the jury observed him in handcuffs. Petitioner's argument is factually incorrect, as the record shows that trial counsel requested a mistrial shortly after the incident occurred:

---

[2]Petitioner contends that trial counsel failed to *quash* the jury or jurors.  He provides no authority showing that counsel's motion for mistrial was not a substantially equivalent motion under state law or that different standards applied to the two motions.

DEFENSE COUNSEL:      First of all, it came to my attention this morning, I understand that we have already put the jury in the box but it came to my attention this morning that my client, Kenny Richards, was being held in the law library area in bench warrant clothes, handcuffed with his wrists shackled to his ankles with at least two Texas Department of Correction officers.  And this was around 8:15, 8:20.  And that approximately fifteen to twenty jurors came by and saw Kenny Richards handcuffed with his wrists shackled at his ankles in the presence of the two CO's.

Now, granted, we have voir dired the jury on this issue and they know he is an inmate.  *But we do object to him being seen in restraints and we would move for a mistrial at this time*.

THE COURT:      First of all, it's inconceivable that with the crime that he's charged [with] here that the jury, including any prospective juror, would not know that he is an inmate at TDC.  So without remarking on whether or not any juror actually saw him or not, it seems harmless at best.

DEFENSE COUNSEL:      We are not trying to make a frivolous motion, Your Honor.  He was seen this morning.  He talked to Mr. Hall about it.  I do agree with the Court, but for the record our motion is denied on that, Your Honor?

THE COURT:      Well, yes. I haven't heard any evidence on it so it's denied.

2 R.R., pp. 67–68.

Petitioner establishes neither deficient performance nor actual prejudice under the circumstances appearing in the instant record.  To any extent petitioner complains that counsel failed to present evidence that he was actually seen shackled by a juror, he himself fails to present any evidence that an actual juror sitting in his trial saw him.  Absent such proof, petitioner's claim of deficient performance is speculative and conclusory.  Nor does petitioner establish that, but for counsel's failure to move to quash the jury or to present evidence that he was seen by an actual juror, there is a reasonable probability that the result

20

of his trial would have been different.  Petitioner does not allege that he was made to appear in open court before the jury in shackles, or that the jury viewed him in visible shackles during the guilt-innocence phase of trial.

The state court denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Failure to Object to Witness Bolstering*

Petitioner complains that trial counsel was ineffective in failing to object to Riggle's testimony that he believed Harvey was telling the truth.

In rejecting this claim on direct appeal, the intermediate court of appeals held as follows:

> Counsel elicited on cross-examination of Riggle that he believed that Harvey was truthful when he interviewed her.  This, argues Richards, was inadmissible opinion testimony and counsel's failure to object fell below the standard of reasonable professional representation.
>
> Counsel's questioning of Riggle was as follows.
>
>> [Richards's Counsel]:     Not in two hours, her being truthful, her coming forward, answering every question you asked, and in two hours not once did you ever hear her put that phone in the hands of my client Richards
>>
>> [A]:   No.
>
> Although it may have been unwise for Richards's counsel to elicit inadmissible testimony on truthfulness, analyzing this claim we cannot say that counsel's

21

actions were not grounded in sound trial strategy. Therefore, Richards has
failed to meet the first prong of *Strickland* on this argument.

*Richards*, *7 (citations omitted).

This Court's review of the record does not support petitioner's argument that trial

counsel was ineffective in objecting to the witness's bolstering under the circumstances, and

it finds no fault with the state court's determination of the issue under the AEDPA standard

of review. It is clear from the record as a whole that defense counsel had attempted

throughout trial to establish that petitioner never had physical possession of the subject cell

phone, and that it was inmate Hickman who came into its possession. To this end, trial

counsel attempted to show that Harvey never told investigators that petitioner had possession

of the cell phone, and that the investigators had believed Harvey. Petitioner does not show

that counsel's actions were not a matter of reasonable strategy or that, but for counsel's

actions or failure to act, there is a reasonable probability that the result of the proceeding

would have been different.

The state court denied relief on this claim. Petitioner fails to show that the state

court's determination was contrary to, or involved an unreasonable application of, *Strickland*

or was an unreasonable determination of the facts based on the evidence in the record.

Respondent is entitled to summary judgment dismissal of this claim.

### *Denial of Equal Protection*

Petitioner argues that Texas Penal Code § 38.11(j) violates due process in that it

criminalizes possession of a cell phone for only TDCJ inmates, does not extend to inmates

22

in local or county jails, and has no rational basis to justify the disparate treatment of different

types of custodial inmates.  This claim was raised, and rejected on both direct appeal and

collateral review.

In rejecting this argument on direct appeal, the intermediate court of appeals held as

follows:

> Richards's fourth issue complains that section 38.11(j) of the Penal Code
> violates the Equal Protection Clause of the Fourteenth Amendment.  The
> language of section 38.11(j) is as follows:  a person commits an offense if the
> person while an inmate of a correctional facility operated by or under contract
> with the Texas Department of Criminal Justice or while in the custody of a
> secure correctional facility or secure detention facility for juveniles possesses
> a cellular telephone.  TEX. PEN. CODE ANN. § 38.11(j) (Vernon 2008).
>
> When reviewing the constitutionality of a statute, we presume that the statute
> is valid and that the legislature did not act unreasonably or arbitrarily in
> enacting it.  The burden is on Richards to prove the statute is unconstitutional.
> The statute must be upheld if it can be reasonably construed as constitutional.
>
> Inmates are not a suspect class and so their equal protection claims must be
> reviewed under a rational-basis test.  So long as the statute furthers some
> legitimate state interest, its constitutionality should be upheld.  Howell told the
> jury that he was immediately worried when he heard there was a cell phone on
> the unit because of security concerns.  He testified that 'we can't fulfill our
> mission to provide safety if offenders are running around with cell phones.'
> Similarly, Riggle testified that the cell phone case was a top priority because
> the prison is always concerned about escape plans made using cell phones.
> Maintaining security in prisons is arguably a legitimate state interest and
> therefore we find no merit in Richards's claim of an Equal Protection Clause
> violation.

*Richards*, at *8 (citations omitted).

In acknowledging that inmates are not a suspect class and that their equal protection

claims must be reviewed under a rational-basis test, the intermediate appellate court relied

on the established Fifth Circuit precedent of *Garcia v. Dretke*, 388 F.3d 496, 499 (5th Cir. 2004) ("Prisoners are not a suspect class for purposes of constitutional protection. This constitutional challenge is therefore subject only to a rational basis standard: to be permissible, the disparate treatment must merely further a legitimate state interest.").

The record contains ample evidence establishing that the penal code provision criminalizing cell phone possession by inmates furthers the legitimate state interest of promoting prison safety and security. This Court's review of the record does not support petitioner's argument that Texas Penal Code § 38.11(j) constitutes a violation of his equal protection rights, and it finds no fault with the state court's determination of the issue under the AEDPA standard of review.

The state court rejected petitioner's claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### *Miranda Violation*

Petitioner contends that his Fifth Amendment protections were violated by an "un-Mirandized" custodial interrogation given in exchange for a "promise of benefit by a person of authority." In rejecting petitioner's claim that the statements were unlawfully obtained and inadmissible, the intermediate court of appeals held as follows:

24

Richards contends in his first issue that the court erred by admitting into evidence the statements he gave to Howell.  He argues that his statements were the result of an unwarned custodial interrogation, were not recorded, and were involuntary because Howell promised to restore Richard's status as a prison trustee in exchange for information.  The State acknowledges that Richards did not receive Miranda warnings prior to making the challenged statements to Howell, but it argues that the evidence was correctly admitted by the trial court because the statements were not the product of 'custodial interrogation.'

We review a trial court's admission or exclusion of evidence for an abuse of discretion.  'A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree.'  The voluntariness of a statement given to law enforcement is determined from the totality of the circumstances.

The court conducted a hearing, outside of the presence of the jury, to determine whether the statements Richards made to Howell were admissible. Investigator Riggle testified that, after he summoned Richards from his cell, he introduced himself and told Richards that he was investigating an allegation that tobacco had been brought into the Ellis Unit.  Richards then immediately said that he wanted to talk to Howell before talking to Riggle, and Richards was escorted out of his office.

Howell testified that Richards asked if he could meet with him.  According to Howell, although he agreed to meet with Richards, he never requested an interview with him.  After Richards was escorted to his office, Howell asked Richards 'You wanted to talk to me. What is on your mind?'  Richards then told Howell the details about his wife's purchasing the cell phone and his offering it to Hickman in exchange for delivery of the tobacco.

Richards testified that when he went to meet with Riggle, Riggle told him that he already had a statement from Richards's ex-wife and that if he did not cooperate, Riggle would see to it that he served every day of his ten-year sentence.  According to Richards, it was then that he requested to speak with Howell.  He specifically wanted to speak with Howell because in a prior incident where Richards was charged with possession of tobacco, Howell had made the case 'go away' after he cooperated and gave information.  He said that on the instant occasion Howell told him he needed to know what was going on in his unit.  According to Richards, he asked Howell to help him out like he did before, and Howell told him that he would have to give really good

information first. As he began to discuss small details, Howell repeatedly told him that the information was not enough and that he needed to give additional information. Richards eventually told him everything. Richards also testified that Howell offered to help him keep his trustee status if Richards helped him find the cell phone.

According to Howell, he never promised Richards anything in exchange for his information. Howell testified as follows,

[Q]:    And during this conversation did you promise Kenneth Richards anything?

[A]:    No, I did not.

[Q]:    Did you tell him that anything bad would happen to him if he did not tell you the full story?

[A]:    No, I mean he was already found in possession of the tobacco by the farm manager. Disciplinary was already generated. I wasn't involved in that process at all. And he was going to be disciplined by agency rules for his misconduct for possession of the tobacco.

[Q]:    And during the conversation did you ever subject him to any type of coercion that would cause him to give you statements?

[A]:    It was probably his expectation that there would be leniency in the disciplinary punishment for his disciplinary offense for the possession of the tobacco. But I never promised him that. Because, you know, he basically was caught red handed, and that wasn't his first time to be found in possession of contraband.

[Q]:    And let me ask you specifically, if you didn't ask him – I will use legal phrases. Did you subject him to any express questioning other than what he told you?

[A]:    No. You know, he came into the office and I asked him, you know, Mr. Riggle said you wanted to talk to me and what is on your mind.

[Q]:    And did you do anything that would indicate that you were going to help him out?

[A]:   No.

[Q]:   Anything that he might have taken from you as being okay, he has now told me, I'm going to get a benefit?  I'm going to give it all up?

[A]:   No, No.  I didn't do any of that.

Article 38.22 generally precludes the use of a defendants statements that result from custodial interrogation absent compliance with its procedural safeguards. But it does not preclude admission of statements that do not stem from custodial interrogation.   Thus, if Richards's statements did not stem from custodial interrogation, article 38.22 does not require their exclusion.

In this case, there is no dispute that Richards's unrecorded oral statements were made while he was in custody; the only disputed issue is whether there was an 'interrogation.'  Interrogation 'refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest or custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'  When the officer's statements are designed to elicit incriminating statements from the defendant, it is interrogation.   Statements that the accused volunteers are admissible.

Thus, not all custodial questioning can be classified as 'interrogation.'  Courts have held a variety of questioning to be outside the constitutional definition of 'interrogation.'  In *Jones,* the Court of Criminal Appeals gave some examples where certain questioning by police officers has not constituted 'interrogation':

> For example, routine inquiries, questions incident to booking, broad general questions such as 'what happened,' and questions mandated by public safety concerns *e.g.* 'where did you hide the weapon' when the weapon has just been hidden in the immediate vicinity.  In Texas . . . courts have held several police questions to be non-interrogative.

Howell testified that after officers found a large quantity of tobacco at the Ellis Unit, he contacted Riggle's office so that they could investigate.  He knew that Riggle was interviewing Richards on questions of tobacco possession, but he did not know any other details surrounding the case.  Both Howell and Riggle testified that Richards asked to meet with Howell after he was brought in to speak with Riggle.  According to Howell, when Richards arrived to meet with

him, Howell asked him 'what's on your mind?'  Richards then began to explain how his wife had delivered tobacco and a cell phone.

*We conclude that the trial court was justified in finding that Richards's oral statements were not the product of custodial interrogation, but were spontaneous and voluntary and thus admissible under section 5 of article 38.22. Even though Richards was in custody, the evidence at trial showed that he made voluntary statements after asking to meet with Howell.*

Richards's testimony conflicted with Howell's when Richards claimed that Howell asked to meet with him (and not vice versa); however, the trial court was entitled to believe the officer's version of the facts and disbelieve Richards.  There was ample evidence from both officers that Richards initiated the discussion and was eager to talk about the cell phone and the tobacco. Many cases have held that such spontaneous, volunteered statements not made in response to interrogation are admissible, whether or not the defendant is in custody.

Howell's question to Richards, 'what's on your mind?' was non-interrogative and more akin to a greeting than a question reasonably calculated to elicit Richards's response. Thus, we cannot say that the trial court abused its discretion in admitting Richards's statement because it was spontaneous and voluntary and not the result of interrogative questioning.

*Richards*, *1–5 (citations omitted, emphasis added).

A review of the record does not support petitioner's argument that admission of the statement violated his Fifth Amendment rights.  Under the AEDPA standard of review, this Court finds no fault with the state court's determination of the issue.

The state court rejected petitioner's claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 32) is GRANTED and this lawsuit is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on May 12, 2014.

_____
Gray H. Miller
United States District Judge